<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OLGA ARRIAGA, | Case No.:  2:17-cv-05288 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
P.O. BOX 1798
RAHWAY, N.J.  07065
      On behalf of Plaintiff

MELISSA K. CURRY
SPECIAL ASSISTANT U.S. ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL, REGION III
P.O. BOX 41777
PHILADELPHIA, P.A.  19101
      On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Olga Arriaga for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the

Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including

the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties,

the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and

Local Civil Rule 9.1(f).  For the reasons set forth below, the Court affirms the Commissioner's

decision that Plaintiff was not disabled.

## I.    PROCEDURAL HISTORY

On November 13, 2013, Plaintiff filed an application for SSI alleging a disability onset

date of July 15, 2013.  (R. 356-65.)[2]  On January 14, 2014, the Commissioner determined that

Plaintiff was not disabled and denied the application.  (R. 207.)  Plaintiff filed for reconsideration,

and on July 15, 2014, the application was again denied.  (R. 221-25.)  On April 19 and July 1,

2016, an Administrative Law Judge held hearings on Plaintiff's application; Plaintiff was

represented by counsel at both hearings.  (R. 41-196.)  On October 28, 2016, the ALJ issued a

decision denying Plaintiff's application.  (R. 17-40.)  On May 26, 2017, the Appeals Council

denied Plaintiff's request for review (R. 1-8), thereby affirming the ALJ's decision as the "final"

decision of the Commissioner.  On July 20, 2017, Plaintiff timely filed this appeal pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3).  ECF No. 1.  On May 9, 2018, Plaintiff consented to have a U.S.

Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  ECF No. 12.[3]  The case was

reassigned to the undersigned Magistrate Judge on December 21, 2018.  ECF No. 18.

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security for a six-year term that expires on January 19, 2025.  Mr. Saul is therefore substituted as Defendant in his official capacity.

[2] "R." refers to the continuous pagination of the administrative record.  ECF No. 6.

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision.  *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

This Court has the authority to conduct a plenary review of legal issues decided by the ALJ in reviewing applications for Social Security disability benefits. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Coleman*, 2016 WL 4212102 at *3 (citing *Schonewolf*, 972 F. Supp. at 284-85) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978))).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ

may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)).  "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705.  As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings.  *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984)).  Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).  A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of

benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B. Standard for Awarding Benefits

Under the Social Security Act, an adult claimant (i.e., a person over the age of eighteen) is disabled and eligible for Social Security disability benefits based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. §§ 404.1505(a), 416.905(a).[4] An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, an impairment can be established by objective medical evidence from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion. *Id.* §§ 404.1521, 416.921.

---

[4] Disability Insurance Benefits (*see* 42 U.S.C. §§ 401, et seq.) and Supplemental Security Income (*see* 42 U.S.C. §§ 1381, et seq.) are separate programs under Title II and Title XVI, respectively, of the Social Security Act. Although they are subject to different qualification requirements, the standard for determining whether a claimant is disabled is the same for both programs. *See Rutherford v. Barnhart*, 399 F.3d 546, 551 n.1 (3d Cir. 2005) (citation omitted). The Court endeavors to provide citations to the applicable regulations for each program but may provide citations only to the disability insurance benefits regulations. *See Carmon v. Barnhart*, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (explaining that because "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and [supplemental security income]," "[w]e provide citations only to the regulations respecting disability insurance benefits").

The process for determining an adult's claim for Social Security disability benefits involves a five-step sequential inquiry. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a).[5] The claimant bears the burden of proof at Steps One through Four. At Step Five, the burden shifts to the Commissioner. *Id.* §§ 404.1512, 416.912; *see Holley v. Colvin*, 975 F. Supp.2d 467, 476-77 (D.N.J. 2013), *aff'd sub nom. Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167 (3d Cir. 2014). At each Step, the ALJ must consider the combined effect of all the claimant's physical and mental impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next Step. 20 C.F.R. §§ 404.1523(c), 416.923(c).

At Step One, the ALJ decides whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work activity that involves doing significant physical or mental activities and is usually done for pay or profit. *Id.* §§ 404.1572(a) & (b), 416.972(a) & (b). If the claimant is engaging in such activity, then the inquiry ends because the claimant is not disabled.

"The [Step Two] inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). At this Step, the ALJ decides whether the claimant has a medically determinable impairment or a combination of such impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. An impairment or combination of impairments is not severe if the claimant has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional

---

[5] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. §§ 404.1527 and 416.927.

limitations.  *Id.* §§ 404.1522, 416.922.  If the claimant does not have a severe impairment or combination of impairments, then the inquiry ends because the claimant is not disabled.

At Step Three, the ALJ decides whether the claimant's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment(s) in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's specific impairment is not listed, the ALJ will consider the most closely analogous listed impairment for purposes of deciding medical equivalence.  *Id.* §§ 404.1526(b)(2), 416.926(b)(2).  If the claimant has an impairment or combination of impairments that meets or medically equals a Listing, then the claimant is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months.  *Id.* §§ 404.1509, 416.909.

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC"), determine the physical and mental demands of the claimant's past relevant work, and determine whether claimant has the level of capability needed to perform past relevant work.  20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  RFC is the claimant's maximum remaining ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. Past relevant work is work performed (either as the claimant actually performed it or as it is generally performed in the national economy) either within the last 15 years or within 15 years prior to the disability date.  In addition, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  *Id.* §§ 404.1560, 404.1565, 416.945, 416.960.  If the claimant's RFC enables her/him to perform past relevant work, then the claimant is not disabled.

At Step Five, the ALJ must decide whether the claimant, considering her/his RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant is incapable of doing so, then s/he is presumed to be disabled if her/his impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

In deciding the claimant's ability to perform other jobs that exist in significant numbers in the national economy, the ALJ must consider whether the claimant's impairment and symptoms result in exertional and/or non-exertional limitations.  The classification of a limitation as exertional is related to the United States Department of Labor's classification of jobs by various exertion levels (sedentary, light, medium, heavy, and very heavy) in terms of the strength demands for sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*. §§ 404.1569a(a) & (b), 416.969a(b).  Non-exertional limitations affect a claimant's ability to meet all other demands of a job (i.e., non-strength demands), including but not limited to difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. at §§ 404.1569a(c), 416.969a(c).

If the claimant has no non-exertional limitations and can perform all or substantially all exertion demands at a given level, then the ALJ must use the Medical-Vocational Rules (also referred to as "Grid Rules") found at 20 C.F.R. § 404, Subpart P, Appendix 2.  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  The Grid Rules reflect various combinations of RFC, age, education, and work experience and direct a finding of disabled or not disabled for each combination.  If the claimant also has any non-exertional limitations or cannot perform substantially all the exertional demands at a given level, then the Grid Rules are used as a framework for decision-making unless there is a rule that directs a conclusion of disabled without

considering the additional non-exertional or exertional limitations. *Id*. §§ 404.1569a(d), 416.969a(d). If the claimant has solely non-exertional limitations, then the Grid Rules provide a framework for decision-making. *Id*. §§ 404.1569a(c), 416.969a(c).

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was forty-one years old on July 15, 2013 (alleged onset date). The relevant period for her SSI claim begins with the November 13, 2013 application date and ends with the October 28, 2016 decision date. *See* 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which she files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month she satisfies the eligibility requirements, which cannot predate the date on which an application was filed). This difference between eligibility for SSI and the alleged onset date is not material to the Court's analysis of Plaintiff's appeal. At Step One of the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (R. 25.) At Step Two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, asthma, chronic obstructive pulmonary disease (COPD), obesity, affective disorder, and anxiety disorder. Also at Step Two, the ALJ found that Plaintiff had the following impairments that are not severe: sleep apnea and hypothyroid. (R. 25.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that were severe enough to meet or medically equal the severity of any Listing. (R. 26-27.) At Step Four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations. (R. 27-33.) The ALJ further found at Step Four that Plaintiff was unable to perform past relevant work as a hand packager and as a cleaner-institutional. (R. 33.) At Step Five, the ALJ found that a finding of not disabled would be directed by Grid Rule 202.20 if Plaintiff had

the RFC to perform the full range of light work.  The ALJ also found at Step Five that at least three jobs – photocopy machine operator, collator operator, and laundry sorter – existed in significant numbers in the national economy and could be performed by an individual with Plaintiff's age, education, work experience, and RFC.  (R. 34.)  The ALJ therefore concluded that Plaintiff was not disabled at any time since November 13, 2013.  (R. 24.)

Plaintiff's attack on the ALJ's decision is multifold.  First, Plaintiff contends that the ALJ erred at Step Three because "the Listings analysis is utterly untethered to any evidence and completely immune from judicial review."  ECF No. 16 at 11-23.  Second, Plaintiff contends that the ALJ erred at Step Four because "the RFC is not based on substantial evidence because few of its critical ingredients are explained in the decision."  *Id*. at 23-39.  Subsumed within Plaintiff's attack on the RFC finding are additional arguments that the ALJ erred:  (1) at Step Four by discounting Plaintiff's subjective symptoms; (2) at Step Four by failing to include all credibly established limitations in the RFC finding; and (3) at Step Five by relying on VE testimony that was inconsistent with the DOT.  Plaintiff asks the Court to reverse and remand for payment or, alternatively, for a new hearing.  Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>Medical Evidence.</u>

#### 1.    Treating Providers.

In December 2012, Plaintiff was treated by Dr. Mervet Asfour (family medicine) with Horizon Health Center.  Dr. Asfour prescribed Zoloft for anxiety after Plaintiff complained that she experienced restlessness, excessive worrying, sleep disturbance, low energy, and sadness.  He

also provided a psychiatric referral.  In January 2013, Dr. Asfour prescribed Tramadol after Plaintiff complained that she experienced low back pain during lifting and bending activities.  She denied any radiating pain, numbness, or tingling.  In February 2013, lumbar spine x-rays revealed slight rotation in the anteroposterior projection, and an MRI was recommended if pain persisted. In April 2013, Plaintiff complained about continued low back pain.  Dr. Asfour prescribed Naprosyn and a Lidoderm patch, and he referred her to physical therapy.  In May 2013, Dr. Asfour referred Plaintiff to a pulmonologist for her asthma.  In November 2013, Dr. Asfour referred Plaintiff for a sleep study.  In January 2014, Dr. Asfour referred Plaintiff for physical therapy and to an orthopedic surgeon.  (R. 542-47, 553-55, 562-64, 572-76, 580, 613-18, 623-24, 631-33, 636-48.)[6]

In January 2013, Plaintiff was evaluated for anxiety at Jersey City Medical Center. Plaintiff stated that she had previously received outpatient psychiatric treatment when she was living in Florida and that she wanted to talk to a psychiatrist in New Jersey.  She stated that she was receiving unemployment benefits from her job as a janitor for a real estate company.  Her primary care physician prescribed Sertraline (Zoloft).  During intake, Plaintiff was observed to display an anxious mood with constricted affect; her examination was otherwise normal.  She was diagnosed with major depressive disorder, instructed to continue taking Zoloft, and additionally prescribed Ambien.  Plaintiff was treated on an outpatient basis in February, March, April, May, July, and November 2013; February and May 2014; and January 2015 (when she was additionally prescribed Alprazolam/Xanax).  Treatment notes reflect that Plaintiff was stable, would continue to develop and utilize social supports, and would maintain a commitment to take responsibility for

---

[6] There are no physical therapy treatment notes in the record except for January through March 2015.  (R. 688-704.)  Nor are there treatment notes in the record from any orthopedic surgeon.

improving quality of life (including awareness, positive attitude, exercise, and healthy eating habits). (R. 502-39, 596-612, 664-87.)

In July 2013, Plaintiff was evaluated by Dr. David Flores (pulmonologist) with Pulmonary Sleep Care Associates. She was diagnosed with asthma and COPD, and she had follow-up appointments in September 2013, January 2014, December 2015, and March 2016. (R. 540-41, 548-49, 619-20, 626-27, 634-35, 655-63.)

In April 2014, a lumbar spine MRI revealed: degenerative disc changes at L3-4, L4-5, and L5-S1, greatest in severity at L4-5; annular bulge and borderline central spinal canal stenosis at L4-5, with evidence of an annual tear anteriorly on the right; annual bulge and mild central spinal canal stenosis at L5-1, with focal annular tear noted posterolaterally and bilaterally; a hyperintense lesion on the right kidney. (R. 651-54.)

In March 2015, Plaintiff returned for a follow-up with Dr. Danielle Groves (physiatrist) with Premier Orthopaedics & Sports Medicine.[7] Plaintiff stated that although bilateral L4-L5 facet injections from May 2014 had helped a lot, her pain returned by January 2015. She rated the pain at 6 on a 10-point scale. Physical examination findings included low back tenderness at the midline, bilateral paraspinal tenderness, pain with extension and bilateral rotation, normal lumbar alignment, neutral sagittal and coronal balance, and no step-off or paraspinal spasm. Plaintiff was diagnosed with bilateral facet syndrome and L4-L5 and given bilateral fact injections two weeks later. In April 2015, Plaintiff reported that she was doing very well. She had decreased pain with extension and bilateral rotation, mild bilateral paraspinal tenderness, and negative straight leg raise. In June 2015, Plaintiff stated that she continued to experience minimal pain, and she began a course of physical therapy. In July 2015, Plaintiff stated that she had experienced a 40-60%

---

[7] There are no treatment notes in the record from Dr. Groves prior to March 2015.

improvement in her pain levels but rated her residual pain at 8 on a 10-point scale. In August 2015, she was given a second set of bilateral fact injections. By September 2015, Plaintiff stated that her pain was almost completely gone and rated it as 1 on a 10-point scale. A bilateral lumbar spine examination was entirely within normal limits. In October 2015, Plaintiff had some increased pain with mild midline tenderness, mild lumbar spasms, and a diminished range of motion in flexion and extension with pain. Although she was scheduled to begin physical therapy that day, Plaintiff had not started physical therapy as of December 2015, allegedly due to scheduling issues.

By February 2016, Plaintiff complained about lower back pain accompanied by mild midline tenderness and mild lumbar spasm; she also had negative straight leg raise and normal range of motion. Plaintiff resumed physical therapy but experienced little improvement and rated her pain at 8 on a 10-point scale with intermittent low back numbness. In March 2016, Plaintiff was given a third set of bilateral facet injections. Two weeks later, Plaintiff stated that her pain had improved by over 70% and that she wanted to resume physical therapy. (R. 705-31.) In May 2016, Plaintiff underwent EMG and nerve conduction studies. The record includes numerical testing results but no summary or diagnosis. (R. 757-59.) In June 2016, a lumbar spine MRI revealed a disc bulge and facet and ligamentous hypertrophy at L4-5, "resulting in mild central canal stenosis, stable." A left annular tear at L3-4 was more conspicuous than in a March 2014 MRI, but there was no discrete compression of the exiting left L3 nerve root. (R. 755.) Also in June 2016, Dr. Groves referred Plaintiff to Dr. Mostafa Elkhashab (neurosurgeon) and to Dr. Ira Goldstein (neurosurgeon). (R. 754, 760, 765-67.)[8]

---

[8] There are no treatment notes in the record from Drs. Elkhashab or Goldstein.

### 2.    Non-Treating Providers.

In January 2014, State Agency reviewing consultants opined that Plaintiff could frequently lift/carry up to 10 pounds in an 8-hour day and occasionally lift/carry up to 20 pounds in an 8-hour day; could stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour day; could sit (with normal breaks) for a total of 6 hours in an 8-hour day; could occasionally balance, stoop, and crawl; could occasionally climb ramps, stairs, ladders, ropes and scaffolds; and must avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation.  The reviewing consultants also opined that Plaintiff did not satisfy the paragraph A or paragraph C criteria for Listing 12.04 (Affective Disorders) or Listing 12.06 (Anxiety-Related Disorders). They further opined that Plaintiff did not satisfy the paragraph B criteria for these Listings because she had mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration.  (R. 197-206.)  In July 2014, State Agency reviewing consultants concurred on reconsideration with their colleagues' opinions from January 2014.  (R. 208-17.)

In May 2016, Dr. Robert Bagner (general surgeon) performed a consultative orthopedic examination.  (R. 743-44.)  Plaintiff described her major problems as depression, anxiety, and lower back pain; she noted that she also had asthma and COPD.  Plaintiff stated that the lower back pain had been worse over the last 3-4 years; she had cramping in her left leg; she was attending physical therapy twice a week; she had received several epidural injections, most recently in March 2016; and she could not sit, stand, or walk for long periods of time.  Dr. Bagner reviewed Plaintiff's April 2014 lumbosacral spine MRI.  Plaintiff's prescribed medications were Advair (asthma/COPD), Spiriva (asthma/COPD), Symbicort (asthma/COPD), Albuterol/Ventolin

(asthma/COPD), EpiPen (allergies), Loratadine/Claritin (allergies), Baclofen (pain), Voltaren (pain), Zolpidem/Ambien (sleep), Alprazolam/Xanax (mental health), and Sertraline/Zoloft (mental health). Dr. Bagner noted that Plaintiff was 58 inches tall and weighed 145 pounds. He provided a detailed summary of physical examination findings; all were normal. In a section of his report entitled "Impression," Dr. Bagner wrote:

> Lumbosacral strain. Note, the patient ambulates without difficulty, gets on and off the examining table without difficulty, dressed and undressed without assistance. She is not uncomfortable in the seated position during the interview, does not use a cane or crutches, can heel and toe walk. The lower back shows a normal range of movement. No pain on straight leg raising. No atrophy. The reflexes are as noted [2+ bilaterally].

(R. 744.) Dr. Bagner opined using a Passive Range Of Motion Chart that Plaintiff had: normal range of motion in her shoulders, elbows, wrists, knees, hips, ankles, cervical spine, and lumbar spine; no sensory or reflex loss; no muscle weakness; negative bilateral straight leg raising test both supine and sitting; and no need for a hand-held assistive device. (R. 745-46.)

Dr. Bagner also completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) and opined that Plaintiff: could frequently lift/carry up to 20 pounds, occasionally lift/carry 21-50 pounds, and never lift more than 51 pounds; could sit, stand, and walk each for 3 hours without interruption; could sit, stand, and walk each for a total of 5 hours in an 8-hour workday; did not require a cane to ambulate; could frequently engage in reaching, handling, fingering, feeling, pushing, and pulling; could frequently operate foot controls; could frequently balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders or scaffolds; had no environmental limitations; and was able to stop, travel alone, walk a block at reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps at reasonable pace without use of a hand rail, prepare a simple meal and feed herself, care for her personal hygiene, and sort/handle/use paper and files. (R. 747-53.)

Also in May 2016, Dr. Jennifer C. Figurelli (psychologist) performed a consultative psychological evaluation. Plaintiff gave Dr. Figurelli a list of prescribed medications that was consistent with the list given to Dr. Bagner. Plaintiff stated that she was receiving outpatient psychiatric treatment for anxiety and depression at Jersey City Medical Center, and her current psychiatrist was Dr. Fox.[9] Dr. Figurelli's mental status examination findings were as follows:

> Claimant was neat in appearance and dressed appropriately. Orientation was normal to time, place and person. She knew the names of the President and the Past President. She knew the name of [the] Mayor of Jersey City. She was able [to] describe the event that had occurred on September 11, 2001. Her affect [was] sad and mood was depressed and anxious. She expressed feelings of sadness, worthlessness, lack of energy, having no interest or motivation. Claimant stated that she feels overwhelmed. She was tearful during the examination. Claimant stated that she was feeling sad and just wanted to be at home. She denied any hallucinations or delusions. She denied any suicidal ideation. She was cooperative and communicated in full sentences.

> Claimant was able to spell the word, "world" forward but not backward. This is a problem of memory and concentration. She was able to recall four words immediately. She was then asked to recall these four words after five minutes and she recalled two of them. Claimant stated, "I forgot." This is a problem of delayed recall and concentration. She was able to repeat four digits forward and three digits backward. Recalling only three digits backward is a memory and concentration problem. She was unable to do the series 7 math problem. She was able to do a series 5 math problem. She was able to do some double digit calculations.

> She reported memory problems. Claimant stated that her doctors' [sic] call he[r] to remind her of appointments. Claimant stated that she does not call herself to check because she feels depressed when using a phone. She stated that if a task is difficult she gives up. Claimant stated that she is easily distracted. Claimant stated that the only task she completes is cleaning. Claimant stated that if doing other tasks she does not finish. Claimant related that when stressed she becomes anxious. Claimant stated that she forgets things her children have just told her. She forgets directions.

(R. 732-36.)

---

[9] There are no treatment notes in the record from Dr. Fox.

Dr. Figurelli also completed a Medical Source Statement Of Ability To Do Work-Related Activities (Mental). Dr. Figurelli opined that Plaintiff had mild limitations in understanding, remembering, and carrying out simple instructions, and in making judgments on simple work-related decisions. Dr. Figurelli also opined that Plaintiff had moderate limitations in understanding, remembering, and carrying out complex instructions, and in making judgments on complex work-related decisions. Dr. Figurelli explained: "Claimant at times had problems with immediate recall. She could only remember two out of four words after an interval of five minutes. She could only recall digits forward and only three digits backward." Dr. Figurelli further opined that Plaintiff had mild limitations in interacting with supervisors – but Plaintiff had moderate limitations in interacting appropriately with co-workers, and in responding appropriately to usual work situations and to changes in a routine work setting. Dr. Figurelli explained: "Claimant has anxiety when near other people. She is depressed most of the time. She does not interact with people when depressed. Claimant['s] response to stress is to become anxious." In response to a question asking whether any other capabilities were affected by Plaintiff's impairment, Dr. Figurelli noted: "Claimant has reported becom[ing] depressed several times a week. Claimant experiences panic and agoraphobia when leaving her apartment." (R. 737-40.)

**B.** **Non-Medical Evidence.**

Plaintiff completed a Function Report in November 2013. She stated that she had no difficulties with personal care activities; cooked complete meals every other day; and spent a few hours each week doing cleaning, laundering, and ironing. She traveled by foot or on public transportation. She shopped for clothes and gifts in stores, by mail, and online. She spoke on the phone every day. She could walk a few blocks before needing to take her asthma medications and rest for a few minutes. She got along well with authority figures but did not know how she handled

written/spoken instructions or changes in her routine.  Her ability to handle stress was dependent on her mood.  She had difficulty sleeping.  (R. 403-10.)  Plaintiff's Function Report is consistent with a Third-Party Function Report completed in November 2013 by her friend of fifteen years. (R. 377-84.)

In April 2016, Plaintiff testified during the hearing about her treating providers and medical history.  (R. 54-74.)  In July 2016, Plaintiff testified that she usually rode the bus or light rail but took her time traveling because of low back pain and leg cramps.  She had not worked since July 2013, when she worked in a warehouse company and suddenly experienced sharp back pains.  She could walk for 5 minutes or 1.5 blocks before needing to use her asthma medication and rest.  She could manage 1 flight of stairs.  She could lift and carry a half gallon of milk.  She was usually at home all day unless she had a medical appointment.  She usually showered fewer than 3-4 times a week."  She could not bend over and thus did not wear tie shoes.  She spent 2 hours every other day cooking; she cleaned the apartment but not every day.  Her daughter brought her to the laundromat and took her grocery shopping.  Plaintiff always had memory and concentration problems; a 30-minute television show was too long for her to follow, and she could not finish anything that she started.  She cried for no reason and could not be around more than 15 people. She had no interest in anything and just did not want to be bothered anymore.  Although she took Ambien, she often woke up during the night and could not return to sleep.  (R. 87-115.)

The Court discusses the relevant VE testimony from the April 2016 hearing in Section V.E. below.

## V.    DISCUSSION

### A.    Local Civil Rule 9.1(e).

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record."  L. Civ. R. 9.1(e)(5)(C).  Plaintiff's 39-page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever.  ECF No. 16 at 1-2; *see id.* at 3-39 (containing few, if any, record citations other than the ALJ's decision).  Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5).  For example, there is no meaningful "statement of the issues presented for review."  L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 16 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence").  As another example, there is no argument "divided into sections separately treating each issue."  L. Civ. R. 9.1(e)(5)(D); *see* ECF No. 16 at 23-39 (challenging ALJ's credibility and Step Five findings in argument section purportedly challenging RFC finding).  The brief is also unnecessarily caustic.

Since May 4, 2018, the undersigned has decided twenty-five Social Security disability appeals in which the plaintiff was represented by the same law firm that represents the Plaintiff in the present case.  The plaintiff's brief in each of those cases has had similar failings.  It is not the Court's burden to sift through Plaintiff's arguments to determine the bases for appeal and then comb through the record searching for support for those arguments.  Plaintiff's counsel, the law firm of Langton & Alter, Esqs., has been notified that any brief that is filed after May 13, 2019 and that does not comply with Local Civil Rule 9.1(e) will be rejected, and any re-briefing time for such a brief, will not be credited when considering reasonable fees for successful appeals.  *See*

*Little v. Berryhill*, No. 2:17-cv-11708 (PAZ), 2019 U.S. Dist. LEXIS 82127, at *44-46 (D.N.J. May 13, 2019). The Court reiterates such notification. The Court will analyze the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of attorney's fees in this case and will adjust any such fees accordingly.

**B.    Step Three.**

At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. As explained by the ALJ:

> Specific consideration has been given to the application listings under section 1.04 Musculoskeletal System and 3.03 Respiratory Disorders of the listed impairments. In addition, SSR 02-1p Obesity was adequately considered, both singularly and in combination with the claimant's underlying impairments.

(R. 26.)[10] The ALJ found that Plaintiff did not satisfy the paragraph B criteria of Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders) because she had mild limitations in activities of daily living; moderate limitations in each social functioning, and concentration, persistence, or pace; and no episodes of decompensation that were of extended duration. The ALJ found that Plaintiff did not satisfy the paragraph C criteria of Listings 12.04 and 12.06 because the record did not show that she would be predicted to decompensate following minimal increase in mental demands or changes in the environment, that she had been unable to function for one or

---

[10] The Court analyzes all Listing criteria, as did the ALJ, as of October 28, 2016, the date of the ALJ's decision. The applicable criteria are described in: 20 C.F.R., Part 404, Subpart P, Appendix 1, Listing 1.04; *id*., Listing 3.03; Social Security Administration Program Operations Manual System ("POMS") DI 34132.011, *Mental Listings from 09/29/16 to 01/16/17*, available at http://policy.ssa.gov/poms.nsf/lnx/0434132011.

more years outside a highly supportive living arrangement, or that she was completely unable to function independently outside her home.  (R. 26-27.)

### 1.    Physical Impairments.

Plaintiff contends that the ALJ committed reversible error at Step Three in analyzing Plaintiff's physical impairments.  Specifically, Plaintiff asserts that the ALJ's analysis:

> tells us nothing of the requirements of listing paragraph 1.04 and mentions no evidence; it tells us nothing of listing paragraph 3.03A&B and mentions no evidence; it doesn't leave a trace of the requirements of SSR 02-1p, mentions no evidence and offers only an assurance that "obesity was adequately considered" without offering any articulated hint of such consideration or what it may have yielded.

ECF No. 16 at 19.  The Court need not decide whether the ALJ's analysis was flawed in any of these respects if the ALJ's alleged errors were all harmless.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("[A] remand is not required here because it would not affect the outcome of the case.").  Plaintiff bears the burden of explaining how a more detailed analysis "would lead to the conclusion that he was disabled at step three."  *Woodson*, 661 F. App'x at 766 (plaintiff must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to [her/]his claims," including "affirmatively point[ing] to specific evidence that demonstrates [s/]he should succeed"); *Gullace v. Comm'r of Soc. Sec.*, No. 15-cv-7630 (FLW), 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) (citing *Woodson*).

Plaintiff argues that she "has indeed established step 3 disability under the listings" because "[h]er disc disease, obesity and breathing disorders combine to establish physical equivalence with paragraph 1.04 and 3.03 in conjunction with SSR 02-1p."  ECF No. 16 at 19.  Plaintiff does not explain with citation to record evidence why the combination of her physical impairments meets or is medically equivalent to those Listings.  The Court therefore finds that remand is not warranted because the error in the ALJ's obesity analysis at Step Three was harmless.  *See*, *e.g.*, *Woodson*,

661 F. App'x at 766 (affirming Step Three finding where claimant "only says in very vague terms that an actual discussion of his impairments would lead to the conclusion that he was disabled at step three") (citations omitted); *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (no basis for remanding case even if Step Three analysis were deficient where claimant complained "in vague terms that certain impairments were not properly compared, separately and in combination, to the listings" without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not"); *Domkos v. Colvin*, No. 15-cv-2660 (JLL), 2016 WL 1732380, at *3 (D.N.J. May 2, 2016) ("Although Plaintiff faults the ALJ for not providing the language of the listings, Plaintiff also fails to provide the language of the listing. Moreover, he does not point the Court to specific record evidence supporting his argument that Listing [] was met; he only points to certain of the points highlighted by the ALJ. He also does not offer analysis or case support for why Listing [] was met in this case. It is not enough to simply call foul and punt to this Court for research and analysis.").

### 2.    Mental Impairments.

Listing 12.04 is met when the criteria of *both* paragraphs A and B are satisfied, *or* when the criteria of *only* paragraph C are satisfied. Unlike Listing 12.04, Listing 12.06 is met when the criteria of *both* paragraphs A and B are satisfied, *or* when the criteria of *both* paragraphs A and C are satisfied. POMS DI 34132.11. As noted above, the ALJ found that Plaintiff did not satisfy paragraphs B or C for either Listing. Plaintiff does not dispute the ALJ's findings as to paragraph C. Instead, Plaintiff contends that she satisfies paragraphs A and B for both Listings. ECF No. 16 at 23.

Paragraph A differs between Listing 12.04 and Listing 12.06. POMS DI 34132.11. Plaintiff argues that "the A criteria of 12.04 and 12.06 are never mentioned and must be assumed

to have been met since the decision continues to a discussion of the B and C criteria of both listings." ECF No. 16 at 19-20; *see id.* at 23 (asserting that Plaintiff's "psychiatric disorders, depression and anxiety, are acknowledged by silence to approximate the A criteria of listings 12.04 and 12.06"). Plaintiff's assertion regarding paragraph A is wrong as a matter of fact because the ALJ's silence cannot be construed as a finding. Plaintiff's assertion is also wrong as a matter of law because it was not necessary for the ALJ to discuss paragraph A after finding that Plaintiff did not satisfy the criteria of paragraphs B or C. *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x at 813-14; *Nunez v. Comm'r of Soc. Sec.*, No. 2:14-cv-4664 (KM), 2015 WL 4770991, at *4 (D.N.J. Aug. 12, 2015). The Court therefore finds no error in this regard.

Paragraph B is identical for Listings 12.04 and 12.06. POMS DI 34132.11. To satisfy Paragraph B, a claimant must demonstrate marked limitations in at least two of the three functional categories or a marked limitation in one category together with repeated episodes of decompensation, each of extended duration. POMS DI 34132.011. A marked limitation means more than moderate but less than extreme and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*, Listing 12.00C (citing 20 C.F.R. § 404.1520a). As to decompensation, "repeated episodes" of "extended duration" means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. *Id.* Plaintiff does not dispute the ALJ's findings that she is mildly limited as to activities of daily living and that she experienced no episodes of decompensation which have been of extended duration. Plaintiff disputes the ALJ's findings of moderate limitations both as to social functioning and as to concentration, persistence, or pace.

For purposes of the paragraph B criteria, "social functioning" refers to the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals" (POMS DI 34132.11, Listing 12.00C2):

> Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

*Id.*[11] Plaintiff asserts that, as to this criterion, "[t]here is no good reason offered to find moderate restrictions and every good reason to find those restrictions to be "marked." ECF No. 16 at 22. This assertion is incorrect. The ALJ found:

> In social functioning, the claimant has moderate difficulties. She experiences anxiety and panic when in large groups of people, elevators, and when in a store, she has to leave if it gets too crowded. However, the claimant has a fiancé, spends time with friends, and has good relationships with her children.

(R. 26.) The ALJ also cited Plaintiff's ability to take public transportation and go to the park with her granddaughter. (R. 26, 32.) The ALJ further cited Dr. Figurelli's opinions that Plaintiff was mildly limited as to interacting appropriately with supervisors and to responding appropriately to usual work situations; and that Plaintiff was moderately limited as to interacting appropriately with coworkers. (R. 31.) Plaintiff does not cite any evidence overlooked by the ALJ in finding a moderate limitation as to social functioning. The Court finds that the ALJ's finding as to this functional category is supported by substantial evidence. The Court alternatively finds that even

---

[11] Plaintiff invokes the definition of "interact with others" pursuant to current Listing 12.00E2 (*see* ECF No. 16 at 21-22), but that Listing was not in effect on the ALJ's decision date (*see* footnote 10 above).

if the ALJ had erred by not finding a marked limitation as social functioning, such error would be harmless because Plaintiff did not have a marked limitation in at least one of the other two functional categories and did not experience even one episode of decompensation.

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  POMS DI 34132.11, Listing 12.00C3.  The ALJ found:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties.  According to the psychiatric consultative examiner, the claimant has deficits in her memory, concentration, and delayed recall.  Also, she gets easily distracted, cannot finish tasks, and forgets directions or things that her children tell[] her.

(R. 26.)   Plaintiff complains that the ALJ erred by failing to explain the "election to label the above roster of inabilities as 'moderate'."  ECF No. 16 at 21.  This complaint is unfounded.  The ALJ also cited Dr. Figurelli's opinions that Plaintiff was mildly limited as to understanding, remembering, and carrying out simple instructions, and to making judgments on simple work-related decisions; and that Plaintiff was moderately limited as to understanding, remembering, and carrying out complex instructions, and to making judgments on complex work-related decisions. (R. 31.)  Plaintiff does not cite any evidence overlooked by the ALJ in finding a moderate limitation as to concentration, persistence, or pace.  The Court finds that the ALJ's finding as to this functional category is supported by substantial evidence.

## C.    Step Four:  Subjective Symptoms.

An ALJ is required to assess the claimant's subjective complaints using a two-step process. *See* 20 C.F.R. § 404.1529; Social Security Ruling 16-3p, *Titles II & VI:  Evaluation Of Symptoms*

*In Disability Claims*, 2016 WL 1237954 (S.S.A. Mar. 24, 2016).[12]  First, the ALJ must determine whether the record demonstrates that the claimant possesses a medically determinable impairment that could reasonably produce the alleged symptoms.  Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations.  To do this, the ALJ must determine if objective medical evidence alone supports the claimant's symptoms; if not, the ALJ must consider other factors, including:  (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any other measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and  (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  The determination or decision must contain specific reasons for weight given to the claimant's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the claimant and any subsequent reviewer can assess how the adjudicator evaluated the claimant's symptoms.

At Step Four, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[12] Plaintiff cites Social Security Ruling 96-7p, *Titles II & XVI:  Evaluation of Symptoms In Disability Claims: Assessing The Credibility Of An Individual's Statements*, 1996 WL 374186 (S.S.A. Jul. 2, 1996). *See* ECF No. 12 at 15-16.  Social Security Ruling 96-7p was superseded by SSR 16-3, which applies to ALJ decisions issued after March 16, 2016.  Social Security Ruling 16-3p "remove[d] the word 'credibility' from the analysis to make clear that there is no examination of a witness's character, and to hew closer to the regulatory language contained within the relevant C.F.R. provisions."  *Pidgeon v. Colvin*, No. 15-cv-2897 (JBS), 2016 WL 2647666, at n.7 (D.N.J. May 9, 2016) (finding that "analysis is the same under either ruling").  The ALJ's decision tracks the language of Social Security Ruling 16-3p.  (R. 28, 31.)

consistent with the medical evidence and other evidence in the record for the reasons explained in

this decision." (R. 26.) As the ALJ explained:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She is able to dress, bathe, and groom herself, cook, clean [and] do laundry, shop for food and supplies, take public transportation, go to doctor's appointment[s], watch television, maintain a relationship with her fiancé and children, and go to the park with her granddaughter.

> Although the claimant has received treatment for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature. Her back pain, asthma, and COPD are stable and well maintained with the use of medication. The claimant has not had any surgery or medical procedures to address any of those conditions. The medical records show that when she receives facet injections into the lower back, she becomes virtually pain free. Additionally, there is no evidence that the claimant's asthma or COPD prevents her from performing daily activities with the use of medication. Similarly, the claimant's psychiatric impairments are well controlled with medications. She has never been psychiatrically hospitalized nor does she go for consistent individual or group therapy. Overall, her physical and mental impairments are controlled, stable, and require only routine treatment and/or maintenance.

(R. 32.) Plaintiff presumably disputes the ALJ's assessment of Plaintiff's subjective symptoms,

because Plaintiff's brief includes over three pages of templated language reciting the applicable

standards. However, Plaintiff neither offers any substantive argument applying those standards

nor points to any conflicting evidence overlooked in the ALJ's explanation for discounting

Plaintiff's subjective symptoms. The Court therefore finds no error in this regard.

### D.    Step Four:  RFC Finding.

At Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform

light work as defined in 20 C.F.R. § 416.967(b) except:

> [S]he can occasionally lift, carry, push, and pull twenty pounds and ten pounds frequently, sit, stand, and walk for five hours each, and requires a sit/stand option where she can alternate to sitting for five minutes every three hours while staying on task. Furthermore, the claimant can frequently operate hand and foot controls with either hand or foot. Also, she can frequently reach, reach overhead, handle, finger, feel, crawl, crouch, kneel, stoop, balance, and climb stairs, ramps, ladders,

ropes, and scaffolds.  Moreover, the claimant can occasionally be exposed to the extreme heat, unprotected heights, moving mechanical parts, humidity and wetness, and dust, odors, fumes, and pulmonary irritants and can be frequently exposed to the extreme cold.  Psychiatrically, the claimant can perform simple and routine tasks, make simple work related decisions, frequently respond appropriately to supervisors, and occasionally respond appropriately to coworkers and the public. Lastly, the claimant does not need to be off task since that can be accommodated by normal breaks.

(R. 27.)    Plaintiff's argument regarding the RFC limitations attributable to her physical impairments is articulated as a two-part question:  "How in the world does the ALJ know any of this and where does she explain how the evidence establishes it?"  ECF No. 16 at 27.  While presented rhetorically, the question has very specific answers:  namely, by evaluating the medical evidence and describing it in the Step Four section of the decision.

Dr. Bagner opined that Plaintiff could lift/carry up to 20 pounds frequently and 21-50 pounds occasionally.  State Agency reviewing consultants opined that Plaintiff could lift/carry up to 10 pounds frequently and up to 20 pounds occasionally.  Dr. Bagner opined that Plaintiff could sit, stand, and walk each for 3 hours without interruption, and also that she could sit, stand, and walk each for a total of 5 hours in an 8-hour workday.  The reviewing consultants opined that Plaintiff could sit, stand, and walk each for a total of 6 hours in an 8-hour day.  Dr. Bagner opined that Plaintiff could frequently engage in reaching, handling, fingering, feeling, pushing, and pulling; could frequently operate foot controls; and could frequently balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders or scaffolds.  The reviewing consultants opined that Plaintiff could occasionally balance, stoop, crawl, and climb ramps, stairs, ladders, ropes and scaffolds.  Dr. Bagner opined that Plaintiff had no environmental limitations.  The reviewing consultants opined that Plaintiff must avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation.  None of Plaintiff's treating providers opined that she had any functional limitations attributable to her physical impairments.   After reviewing Plaintiff's

treatment records in detail, and after expressly considering Plaintiff's height and weight pursuant to Social Security Ruling 02-1p, the ALJ adopted – with one exception – the most restrictive limitations opined by Dr. Bagner or the reviewing consultants.  As to postural limitations, the ALJ found that the medical evidence did not support the reviewing consultants' opinion that Plaintiff was limited to occasional performance.

Plaintiff next argues that the ALJ's findings of moderate limitations as to social functioning and concentration, persistence, or pace "did not translate into any limitations in the mental RFC or in the questioning of the vocational expert."  ECF No. 16 at 38.  This is false.  The ALJ's RFC finding included two sentences of limitations attributable to Plaintiff's mental impairments, beginning with the word "Psychiatrically."  Plaintiff simultaneously argues that these limitations are "uncompatible" (sic) with Dr. Figurelli's overall assessment.  ECF No. 16 at 31.  The Court disagrees.  The limitations are near-verbatim recitations of Dr. Figurelli's opinion regarding Plaintiff's specific functional abilities as memorialized in the Medical Source Statement Of Ability To Do Work-Related Activities (Mental).  The record contains minimal treatment notes from only four mental health appointments since the alleged onset date.  Plaintiff testified that she had memory and concentration issues going back to her childhood, yet she was gainfully employed for many years.  Plaintiff's counsel's belief that her mental impairments require an off-task limitation lacks both evidentiary value and support.

The Court therefore finds that substantial evidence supports the ALJ's RFC finding.  The Court alternatively finds that any error in this regard would be harmless because Plaintiff does not "affirmatively identify evidence that [her] impairment[s] impose[] additional limitations on [her] functional capabilities."  *Gullace*, 2017 WL 714536, at *10 (citing *Rutherford*, 399 F.3d at 553).

## E.    **Step Five.**

Plaintiff contends that the ALJ committed reversible error at Step Five by relying on VE testimony that is inconsistent with the Dictionary of Occupational Titles (DOT).  *See* U.S. Dep't of Labor, Dictionary of Occupational Titles (G.P.O. rev. 4th ed. 1991), *available at* https://www.oalj.dol.gov/LIBDOT.HTM .DOT.  Specifically, Plaintiff argues that the three jobs identified by the VE "require[] 6 hours of standing and walking while the ALJ's hypothetical allows for only 5 hours."  ECF No. 16 at 38 (citing Social Security Ruling 83-10, *Titles II and XVI: Determining Capability To Do Other Work – The Medical-Vocational Rules of Appendix 2*, 1983 WL 31251, at *5 (S.S.A. 1983)).  The Court disagrees.  Both Plaintiff's counsel and the ALJ vigorously questioned the VE on this issue during the July 2016 hearing.  (R. 156-92.)  The VE testified that his testimony was consistent with the DOT.  (R. 174.)  The ALJ made a specific finding under Social Security Ruling 00-4p that the VE's testimony was consistent with the DOT and further explained:

> At the hearing, [Plaintiff's counsel] argued that the vocational expert mingled his own experience into his opinion.  The undersigned finds that the vocational expert correctly distinguished and discussed his experience to augment his opinion regarding the availability of jobs and clearly distinguished this from the DOT.

(R. 34.)  Moreover, at least one other judge in this District has found "meritless" the broad argument that "any job title that the DOT classifies as light work requires that a person be able to stand and/or walk for six hours."  *Trzeciak v. Colvin*, No. 15-cv-6333, 2016 WL 4769731, at *10 (D.N.J. Sep. 12, 2016) (McNulty, J.); *accord Hence v. Astrue*, No. 12-cv-1, 2012 WL 6691573, at *7 (E.D. Va. Nov. 30, 2012) (Miller, M.J.) ("Moreover, the definition of light work acknowledges that some light work can be performed while 'sitting most of the time.'") (quoting 20 C.F.R. § 416.967(b)), *report and recommendation adopted*, 2012 WL 6697109 (E.D. Va. Dec. 21, 2012)

(Davis, J.).  The Court therefore finds that substantial evidence supports the ALJ's Step Five findings.[13]

## V.    CONCLUSION

For these reasons, the Court affirms the Commissioner's decision that Plaintiff was not disabled.


Dated:    June 26, 2019                              _____s/ Paul A. Zoss_____
At Newark, New Jersey                        PAUL A. ZOSS, U.S.M.J.

---

[13] To the extent Plaintiff argues that the ALJ erred at Step Five by failing to include additional limitations in the hypothetical questions presented to the VE, the Court finds that such argument simply restates Plaintiff's argument that the ALJ erred in crafting the RFC finding at Step Four and must be rejected because the RFC finding was supported by substantial evidence.  *See Rutherford*, 399 F.3d at 554 n.8.